YALDA SATAR (SBN 304366)
    ysatar@cair.com
Council on American-Islamic Relations-CA
2180 W. Crescent Ave, Suite F
Anaheim, CA 92801
T: (714) 776-1177 /F: (714)776-8340

CAREY SHENKMAN (*Pro Hac Vice* Pending)
    careyshenkman@riseup.net
124 Washington Pl.
New York, NY 10014
T: (212) 243-3805 / F: (212) 243-2007

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRSTY POWELL,<br><br>　　　　　*Plaintiff,*<br><br>　　　　　vs.<br><br>CITY OF LONG BEACH, a political subdivision; POLICE CHIEF ROBERT G. LUNA in his official capacity; EDUARDO SALDANA in his individual and official capacities; CONRAD PENN in his individual and official capacities; DOES 1-4 in their individual and official capacities<br><br>　　　　　*Defendants.* | Case No.: 2:16-cv-2966<br><br>COMPLAINT FOR DAMAGES FOR:<br>1.　　Violation of Religious Land Use and Institutionalized Persons Act<br>2.　　Violation of 1st Amend. Free Exercise Clause<br>3.　　Violation of the California Constitution (Article I, Section 4)<br>4.　　Violation of California Civil Code § 52.1 (Tom Bane Act)<br><br>**Jury Trial Demanded** |

# INTRODUCTION

1.　　By this Complaint, Plaintiff Kirsty Powell seeks relief from the substantial burdens that the City of Long Beach, its officers, and its agents unlawfully imposed on the practice of her religion.

Mrs. Powell is a practicing Muslim American who was denied the right to wear her religious headwear, *hijab*, by the LBPD and defendant officers while detained overnight at a police station and while in the presence of men who are not related to her, including officers, inmates, and members of the public at the station.  Defendant Saldana forcibly removed Plaintiff's religious head-covering and prohibited her from wearing it, even though female officers could have searched her in private and allowed her to continue wearing it following the search without any valid security concerns. Plaintiff was also forced to appear in a publicly-available booking photo without her religious headwear.  As a result of the foregoing deprivations of the free exercise of her religion, Kirsty Powell suffered severe discomfort, humiliation, and emotional distress.

## VENUE AND JURISDICTION

2.      This action arises under 42 U.S.C. § 1983, the laws and Constitution of the United States, and the laws and Constitution of the State of California. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 2000cc-2(a), and directly under the Constitution. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

3.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

4.      Plaintiff Kirsty Powell is a 33 year-old African-American woman.  At all times relevant to this complaint, Plaintiff resided in Long Beach, California with her husband.

5.      Plaintiff is a practicing Muslim and is an adherent of the Islamic faith.  In accordance with her religious beliefs and as a part of the exercise of her religion, Plaintiff wears a headscarf known as the *hijab*.  The word *hijab* comes from the Arabic word "hajaba," which means to hide or screen from view or to cover.  Plaintiff's *hijab* covers her hair, ears, neck, and part of her chest when she is in public and when she is in the presence of men who are not members of her immediate family.

6. Defendant City of Long Beach ("Long Beach") is a public entity, duly organized and existing under and by virtue of the laws of the State of California. At all times relevant to this Complaint, Defendant Long Beach employed Police Chief Robert Luna, Defendants Officer Penn and Officer Saldana and unidentified defendants designated herein as John Doe Police Officers. The Long Beach Police Department ("LBPD") is a subdivision and/or department of Long Beach. On information and belief, the LBPD receives federal financial assistance as well as financial assistance from the State of California.

7. All acts hereinafter complained of were performed by Police Chief Robert Luna and Officers Penn and Saldana within the course and scope of their duties as peace officers for Long Beach and its Police Department and at all times herein acted under the color of the statutes, ordinances, regulations, policies, customs, usages and authority of Defendant Long Beach and under the color of the statutes, regulations and policies of the State of California.  Defendant Long Beach and its Police Department either encouraged, assisted, ratified and/or with deliberate indifference failed to prevent the acts and omissions complained of herein.

8. Plaintiff is ignorant of the true names and capacities of defendants sued herein as John Doe Police Officers, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege said defendants' true names and capacities when ascertained.

## FACTUAL ALLEGATIONS

9. On May 5, 2015, Kirsty Powell and her husband, Deshawn Smith, were driving home, at or near, Market St. and Long Beach Blvd. in Long Beach, California.

10. Without cause, Mr. Smith's vehicle was pulled over, at or around 12:45 PM, by Officer Conrad Penn and Officer Eduardo Saldana of the LBPD. Mr. Smith asked Officer Saldana why he was being pulled over.  The officer stated that it is because he was driving a "low rider" and that the officer "sees his car all the time." Mr. Smith has owned his 1984 Cadillac Coupe Deville for

3

approximately five (5) years and has taken the same route home to and from work for over two (2) years. Despite crossing paths with Officer Saldana for over two years, he has never been pulled over for any traffic violation.

11.    Mrs. Powell, a passenger in the vehicle, was approached by Officer Penn who asked for her identification. She informed Officer Penn that she did not have any identification with her and subsequently provided her name and address to Officer Penn.

12.    After several minutes, Officer Penn approached Mrs. Powell with handcuffs. Mrs. Powell was informed that there were allegedly two warrants for her arrest.  Regarding one of the warrants, it was later discovered that her sister falsely used Mrs. Powell's identity.

13.    Mrs. Powell's only prior incident with the law was in 2002 where police questioned her regarding a shoplifting incident at a grocery store.  Mrs. Powell was questioned and released but not cited for the incident.  She was unaware that a warrant had been issued.  Despite her confusion, Mrs. Powell cooperated with the officers.

14.    Mrs. Powell is a practicing Muslim and wears a *hijab* in accordance with her sincerely-held religious beliefs.  Many observant Muslim women follow an interpretation of the Quran that makes it obligatory for women to cover their heads and much of their body for the sake of dignity, modesty, and bodily integrity.

15.    When Mr. Smith realized his wife was going to be arrested, he requested a female officer be present.  He informed the officers that his wife wears a *hijab* and that any physical contact, such as a pat down needs to be conducted by a female officer.  Officer Penn responded by telling the couple that he was, "Allowed to touch a woman." Mrs. Powell was then handcuffed and walked to the police cruiser.

16.    Officer Saldana stated to her that she was, "Not allowed to wear her *hijab*."

17.    Mrs. Powell informed Officer Saldana that she wears a *hijab* in accordance with her

4

religious practice and that it is her legal right to wear it. Officer Saldana responded by telling Mrs. Powell that her husband could either remove it there or the officers would remove it at the station house. Mrs. Powell again refused to remove her *hijab*, and began to cry.

18.     Mrs. Powell was then driven to the police station.

19.     During booking procedures, while Mrs. Powell was still handcuffed, Officer Saldana forcefully stripped her of her *hijab* in full view of other male officers and inmates.

20.     Not only were two male arresting officers present, but Mrs. Powell was in an area with an open window in a location where several other male officers were present. On two occasions, groups of approximately twelve to fifteen (12-15) male inmates walked by her while she did not have her *hijab* on.  Mrs. Powell was again in the presence of several other male officers while being transferred for housing. Not once was a female officer provided.

21.     Mrs. Powell was transferred for housing, while in the presence of several male officers. She was escorted to the women's jail area on the second level by a female officer, where she observed two other female officers present.

22.     Mrs. Powell was placed in a holding cell alone.  She was held in the jail overnight, forced to sit in a cell feeling distraught, vulnerable, and naked without her headscarf to everyone that passed.

23.     Mrs. Powell's headscarf was not returned to her until the following day at approximately 1:30 P.M. when her husband posted bond. A female officer handed her the bag.  Mrs. Powell immediately put her *hijab* on then left.  The inventory report provided to Mrs. Powell upon release lists 'scarves' as items that were confiscated from her.

24.     Mrs. Powell was further distressed by the fact that her booking photo, taken without her headscarf, would become public record and be permanently available to all. The existence of the photo continues to haunt Mrs. Powell.

25.     In the aftermath of the incident, Mrs. Powell felt exposed, humiliated, and violated by

what had happened, including having her headscarf forcibly removed. She cried throughout the ordeal and experienced humiliation when both her religious beliefs and personal integrity were violated. She felt that the male officers and male inmates had seen parts of her body that they should not have seen, according to her religious beliefs.

## DEFENDANTS' CULPABILITY

26.     On information and belief, Defendants Long Beach and its employees and agents forced Plaintiff to remove her religious headwear pursuant to a custom, practice, or official policy. Officer Saldana stated both that he was "Allowed to touch a woman" and that Mrs. Powell was "Not allowed to wear her hijab."

27.     Alternatively, based on information and belief, Defendants Long Beach and its employees and agents forcibly removed, and prohibited Plaintiff from wearing religious headwear pursuant to a custom, practice, or official policy implemented by the LBPD, Defendant Officer Penn, Defendant Officer Saldana, or other officers employed by Long Beach and/or the LBPD, which was ratified by Long Beach or which Long Beach failed to address.

28.     LBPD acknowledges the significance of *hijab* to Muslim women, investigating the forcible removal of a Muslim woman's religious head-covering as a "hate crime." See Press Release, L.B.P.D. SEEKS PUBLIC'S HELP IN ROBBERY BEING INVESTIGATED AS HATE CRIME (July 23, 2014), available at http://www.longbeach.gov/police/press-releases/l-b-p-d--seeks-public-s-help-in-robbery-being-investigated-as-hate-crime/. The LBPD described a "*hijab*" as "a cover worn by Muslim women over their head to conceal their hair and neck." Then Police Chief Jim McDonnell stated that "Crimes of this nature will not be tolerated in our city." Id.

29.     In contrast to the LBPD policy, custom, or practice forcing Muslim women to remove their religious headwear while in police custody, the Federal Bureau of Prisons has enacted a policy accommodating "religious headwear" providing that "[s]carves and head-wraps (*hijabs*) are

6

appropriate for female inmates . . . ." U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement re: Religious Beliefs and Practices (Dec. 31, 2004), available at http://www.bop.gov/policy/progstat/5360_009.pdf (last visited January 14, 2015). The federal policy authorizes female Muslim inmates to wear a "*hijab*," and it states that such "[r]eligious headwear is worn throughout the institution." Id.  The policy is intended to protect "the religious rights of inmates of all faiths" while maintaining "the security and orderly running of the institution." Id.

30.     In contrast to the policy, custom, or practice prohibiting the use of religious headwear, counties neighboring Long Beach have enacted policies accommodating religious headwear. Following a lawsuit by a Muslim woman forced by local deputies to remove her headwear while in custody in San Bernardino County's West Valley Detention Center, San Bernardino County agreed in 2008 to adopt a policy accommodating the right of Muslim women to wear headscarves in County jails. See San Bernardino County Agrees To Allow Religious Head Scarves In County Jails (Nov. 3, 2008), available at https://www.aclu.org/news/san-bernardino-county-agrees-allow-religious-head-scarves-county-jails (last visited January 15, 2015). The Orange County Sheriff's Department, as of 2013, does not require Muslim women in custody to remove their headscarves in front of male officers, and provides temporary headscarves. This occurred following a suit by a Muslim woman placed in North County Justice Center for several hours after being forced to remove her headscarf. County, ACLU agree on headscarves for those in custody, OC Register, (Feb. 23, 2013), available at http://www.ocregister.com/articles/religious-495992-county-court.html (last visited January 15, 2015).

31.     Like the Federal Bureau of Prisons, other states have enacted policies accommodating religious headwear.  The Kentucky Department of Corrections, for example, permits "[s]carves and head wraps to be authorized for female inmates who have identified a religious preference of Muslim, Jewish, Native American, Rastafarian, and those of the orthodox Christian tradition." This includes the *hijab*.  Kentucky Corrections, Policies and Procedures, Policy No. 23.1, at 5 (filed Jan. 9, 2007). The

New York Department of Correctional Services permits inmates to wear religious headwear. Approved religious head coverings include the "khimar" – a "cloth headcovering (not to cover the face) for female members of the Islamic faith measuring no more than 4 feet by 4 feet." State of New York, Dep't of Correctional Servs., Directive No. 4202, at 6-7 (May 12, 2004, last revised April 24, 2007)

32.     In contrast to the policy, custom, or practice prohibiting religious headwear in police custody, including in booking photos, the U.S. Citizenship and Immigration Services issued Policy Memorandum in 2012 allowing religious headwear to be worn in photographs. Specifically, "USCIS will accommodate an individual who wears headwear as part of their religious practices." (July, 23 2012), available at https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2012/August%202012/Accommodating%20Religious%20Beliefs%20PM.pdf (last visited April 11, 2016). If the headwear casts a shadow over the individual's face making identification impossible, USCIS will "ask an individual to remove or adjust portions of religious headwear that covers all or part of the individual's face." Id. If the individual is asked to remove all or part of their religious headwear, USCIS will offer a private room or screened area and a same gender photographer. Id. If USCIS is unable to accommodate with a private room and same gender photographer, USCIS will offer to reschedule the appointment until an accommodation can be made. Id.

33.     Defendants' forcibly removing Plaintiff's religious headwear and prohibiting its use while in police custody pursuant to the above-described custom, practice, or policy violated Plaintiff's right to the free exercise of her religion, violated her rights under federal law, violated her rights under the California Constitution and laws, and caused her extreme mental and emotional distress.

34.     On May 5, 2015, the day of the events that form the basis of this Complaint, Defendant Police Chief Robert Luna managed and supervised the LBPD and all officers working therein,

including the officers, Officers Penn and Saldana, and Officers Does 1-4 who had contact with Plaintiff.

35.     On information and belief, Defendant Police Chief Robert Luna directed officers, including Defendants Officer Penn and Officer Saldana to prohibit the use of religious headwear while processing individuals in police custody.

36.     On information and belief, Defendant Police Chief Robert Luna, as supervisors of the LBPD, and of all officers, including Officers Penn and Saldana, were aware or should have been aware that officers, including Officers Penn and Saldana, engaged in the practice of prohibiting religious headwear in police custody, and that such practice would violate Plaintiff's right to free exercise of religion, violate her rights under federal and state law, and cause her extreme mental and emotional anguish. Defendant Police Chief Robert Luna however, failed to prevent officers, including Officers Penn and Saldana, from forcibly removing Mrs. Powell's headwear or prohibiting its use, by training those officers, exercising their control over those officers, or adequately supervising those officers.  Nor did Defendant Police Chief Robert Luna, having knowledge of those officers' prohibition on the wearing of religious head coverings, remediate or redress those officers' conduct.

37.     Defendants had no reasonable basis to believe that their actions in prohibiting Mrs. Powell from practicing her religion were lawful.  The right that she sought to exercise and the fact that Defendants' actions violated that right were clearly established and well settled law as of May 5, 2015. In particular, Defendants should have known about the clearly established law prohibiting Defendants from imposing a substantial burden on religious exercise in the absence of a compelling government interest. Accordingly, Defendant Police Chief Robert Luna should have known that causing or allowing subordinate officers, Officers Penn and Saldana, to prohibit Plaintiff from wearing her religious headscarf would violate Kirsty Powell's right to the free exercise of her religion, violate her rights under federal and state law, cause her extreme mental and emotional distress, and would subject

9

them to liability in their individual and official capacities.

38.     In failing to adequately train, control, and supervise its officers and in failing to implement a policy, such as the Federal Bureau of Prisons Policy or that of neighboring San Bernardino or Orange County, that safeguards and accommodates the religious rights of those in custody such as Plaintiff, Defendant Police Chief Robert Luna demonstrated reckless indifference to Plaintiff's constitutional rights.

39.     In forcibly removing Plaintiff's headscarf and leaving her exposed in front of male officers and inmates, after being told that Plaintiff wore the scarf for religious reasons and could not be exposed in front of males, and when female officers were available to accommodate Plaintiff, defendants LBPD Officers Penn and Saldana acted with reckless indifference to Plaintiff's constitutional rights.

## FIRST CAUSE OF ACTION

### Violation of Religious Land Use and Institutionalized Persons Act

### 42 U.S.C. §§ 2000cc et seq.

### (Against All Defendants)

38.     Plaintiff incorporates the above paragraphs as though fully set forth here.

39.     Under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

40.     While confined in an institution that receives federal funding, Defendants substantially burdened Mrs. Powell's religious exercise by doing, encouraging, assisting, ratifying, and/or with

deliberate indifference failing to prevent the following: (a) forcibly removing her religious headwear, in the presence of male officers and male inmates, when female officers were available to accommodate Plaintiff, (b) prohibiting her from covering her head for the duration of her detention, including overnight, and (c) forcing her to take a publicly available booking photo without religious headwear.

41.     By their actions described above, Defendants imposed a substantial burden on Plaintiff's religious exercise by forcing Plaintiff to violate a fundamental tenet of her faith and a central component of her religious practice. "A Muslim woman who must appear before strange men she doesn't know, with her hair and neck uncovered in a violation of her religious beliefs, may feel shame and distress. This is precisely the kind of 'mischief' RLUIPA was intended to remedy." Khatib v. County of Orange, 639 F.3d 898, 907 (9th Cir. 2011) (Gould, J., concurring). That substantial burden neither furthers a compelling governmental interest nor is the least restrictive means of furthering a compelling governmental interest.

42.     Accordingly, Defendants have violated Plaintiff's rights under RLUIPA.  As a result of Defendants' conduct, Kirsty Powell suffered, and continues to suffer, extreme shame, humiliation, mental anguish, and emotional distress.

## SECOND CAUSE OF ACTION

### Violation of the First Amendment

### 42 U.S.C. § 1983

### (Against All Defendants)

43.     Plaintiff incorporates the above paragraphs as though fully set forth here.

44.     The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ."

45.     By their actions described above, including by forcibly removing Plaintiff's headscarf

11

and by prohibiting Plaintiff from covering her head with her headscarf, including in the presence of male officers and inmates, when female officers were available, Defendants denied Plaintiff the right to free exercise of religion, as guaranteed by the First Amendment to the Constitution of the United States and incorporated against the States through the Fourteenth Amendment.

46.     As a result of Defendants' conduct, Kirsty Powell suffered, and continues to suffer, extreme humiliation, shame, mental anguish, and emotional distress.

## THIRD CAUSE OF ACTION

### Violation of the California Constitution

### Article I, Section 4

### (Against All Defendants)

47.     Plaintiff incorporates the above paragraphs as though fully set forth here.

48.     Article I, Section 4 of the California Constitution provides: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

49.     By their actions described above, including forcibly removing Plaintiff's headscarf and prohibiting Plaintiff from covering her head with her headscarf, including in the presence of male officers and inmates, when female officers were available, Defendants denied Plaintiff the right to free exercise of her religion without discrimination, as guaranteed by Article I, Section 4 of the California Constitution.

50.     As a result of Defendants' conduct, Kirsty Powell suffered, and continues to suffer, extreme humiliation, shame, mental anguish, and emotional distress.

## FOURTH CAUSE OF ACTION

### Violation of California Tom Bane Act

### (Against All Defendants)

51.     Plaintiff incorporates the above paragraphs as though fully set forth here.

12

52.     California's Tom Bane Act, California Civil Code § 52.1, provides a civil action for damages for a person whose enjoyment of federal or state rights has been interfered with by a person who, whether or not acting under color of state law, interferes with that right by threats, intimidation, or coercion. See Cal. Civ. Code § 52.1(a), (b).

53.     By the actions described above, including (a) threatening to forcibly remove Plaintiff's headscarf, and (b) forcibly removing her headscarf, which amounted to contact highly offensive to her bodily integrity, Officer Saldana unlawfully interfered with Plaintiff's federal and state rights to the free exercise of her religion in violation of California's Tom Bane Act. These rights are guaranteed to Plaintiff by the First Amendment of the United States Constitution and by Article I, Section 4 of the Constitution of the State of California.

54.     As a result of Defendants' threats, coercion, or intimidation, Plaintiff was harmed in that she was forced to be exposed to men not part of her immediate family in violation of her religious beliefs, and Plaintiff was also harmed in that she suffered emotional distress because of Defendants' actions described above.

## REQUEST FOR PRELIMINARY INJUNCTION

55.     Plaintiff incorporates the above paragraphs as though fully set forth here.

56.     Defendants' conduct as alleged above was extreme, outrageous, and intolerable in a civilized society.

57.     Defendants' actions were intentional and made with reckless indifference to Plaintiff's rights and sensibilities.

58.     Plaintiff's right to the free exercise of her religion was infringed upon and substantially burdened by Defendants' actions.

59. Defendants' policy, practice, and custom of forcibly removing religious headwear, and prohibiting the use of religious headwear without accommodation while being processed into police custody is unlawful and infringes upon the right of Plaintiff and other Muslim women to freely exercise their religion without it being substantially burdened by the government.

60. Defendants' policy, practice, and customs caused and continue to cause Plaintiff and other Muslim women harm. In the absence of injunctive relief, Plaintiff and other similarly-situated Muslim women will continue to suffer irreparable harm.

61. Plaintiff is entitled to a preliminary and thereafter a permanent injunction enjoining Defendants from making publicly available her booking photo displaying her without her religious headwear, as well as continuing their policy, practice, or custom of forcibly removing religious headwear as well as prohibiting the use of religious headwear.

62. Pursuant to Federal Rule of Civil Procedure 65, Plaintiff is entitled to a preliminary and thereafter a permanent injunction requiring Defendant Long Beach and the City of Long Beach Police Department to: (1) seal the booking photo of Mrs. Powell taken without her headwear so that it is not publicly available; (2) modify its current policy to specifically provide accommodations for wearing religious headwear in police custody; and (3) provide appropriate training regarding the modified policy.

63. Plaintiff has a strong likelihood of succeeding on the merits of her claims.

## PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that the Court enter a judgment, including, but not limited to:

a. Compensatory damages in an amount to be proven at trial;

b. Punitive damages in an amount to be proven at trial;

c. Nominal damages;

d. Costs and reasonable attorneys' fees;

e. Preliminary and permanent injunction enjoining Defendants from making publicly available her booking photo, requiring Defendants to modify its current policy to specifically allow religious headwear in custody, and provide appropriate training regarding the modified policy; and

f. Such additional and further relief as the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on any and all issues triable by a jury.

Respectfully submitted,

Dated: April 29, 2016

Yalda Satar
Carey Shenkman

*Attorneys for Plaintiff*

**AFFIDAVIT OF KIRSTY POWELL**

I, Kirsty Powell, declare as follows:

1.     I am the plaintiff in this action.  I make this declaration based on my personal knowledge and if called upon to do so, I could and would competently testify accordingly.

2.     Based on my personal knowledge, the injuries alleged in this complaint occurred within this Judicial District.

I declare under penalty of perjury this 29ᵗʰday of April 2016 in _Montgomery, Ohio_ that the above and representations are true and correct to the best of my knowledge.

_____

Kirsty Powell